

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMBER KAYE, §
 §
    Plaintiff, §
 §
VS. § NO. 4:17-CV-656-A
 §
BNSF RAILWAY COMPANY, §
 §
    Defendant. §

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

Before the court for consideration and decision is the motion of defendant, BNSF Railway Company, for summary judgment on the claims plaintiff, Amber Kaye, has asserted against it. The court considered the motion and heard from the parties in reference thereto at the pretrial conference held May 29, 2018. Having considered the motion, plaintiff's response thereto, the reply, the record in this action, the applicable legal authorities, and the verbal presentations of the parties, through counsel, at the pretrial conference, the court concludes that the motion should be granted, and that plaintiff's claims against defendant should be dismissed.

I.

<u>Plaintiff's Claims</u>

Plaintiff initiated the above-captioned action on August 7, 2017, by the filing of an original complaint. On March 26, 2018,

plaintiff filed her first amended complaint. In it, plaintiff alleged claims against defendant for disability discrimination, failure-to-accommodate, and retaliation, each arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12213, and Chapter 21 of the Texas Labor Code.

II.

Grounds of the Motion

Defendant urges the court to grant its motion for the following reasons: (1) plaintiff's disability discrimination and failure-to-accommodate claims fail because plaintiff was not a "qualified individual," and she was not discriminated against because of, nor denied a reasonable accommodation for, her alleged disability; (2) plaintiff's retaliation claim fails because plaintiff was not a "qualified individual," and she did not engage in nor was she retaliated against for engaging in legally protected activity; (3) all of plaintiff's claims fail because defendant had a legitimate, non-discriminatory reason for terminating her employment, that was not pretext for discrimination or retaliation; (4) plaintiff's failure to mitigate her damages foreclosed her ability to recover back pay or front pay; and (5) plaintiff's Family & Medical Leave Act, 28 U.S.C. §§ 2611-2654, and Title VII, 42 U.S.C. §§ 2000e to 2000e-17, claims fail because she abandoned them.

2

III.

## Undisputed Facts

The summary judgment record establishes without dispute the following facts pertinent to the first three grounds of the motion:

Plaintiff worked for defendant from 2012 until August 26, 2015, as an international border customs clerk ("customs clerk"). Doc.[1] 51 at 1, ¶ 4. As a customs clerk, plaintiff served as a point of contact for, and otherwise provide assistance to, defendant's trains crossing the border between the United States and Canada. Doc. 23 at 37-40. Each customs clerk is assigned to work one of several eight-hour shifts. Id. at 131; Doc. 51 at 86. In addition to their regularly scheduled shifts, each customs clerk was often required to report to work on shifts that were not their regularly scheduled shifts. Doc. 23 at 152, ¶ 5. At times, an on-call customs clerk was permitted to refuse when called to cover a shift, but only if there was another customs clerk with less seniority to whom the shift could be deferred. Id. at 56-57 & 152, ¶ 5. If more senior customs clerks were not willing to fill a shift that became available, it was mandatory

---

[1] The "Doc.___" reference is to the number of the referenced item on the docket in this action, No. 4:17-CV-656-A.

for custom clerks with the least seniority to fill the shift. Id.

When plaintiff was hired, she received training on a variety of matters, including the company's anti-discrimination and anti-harassment policies, how to report discrimination or harassment, how to access company policies, and how to access and use defendant's Employee Assistance Program ("EAP"). Id. at 24 & 167-68, ¶¶ 3 & 5. Plaintiff knew how to access defendant's company policies, including the policy that governed how to request an accommodation, at all points during her employment. Id. at 48 & 118-19.

On February 19, 2015, one of plaintiff's supervisors, either LaDonna Grubbs ("Grubbs") or Dena Wilds ("Wilds"), informed plaintiff that she should use EAP if she was experiencing problems that would interfere with her work. Id. at 12-13, 49, 51-52, & 159 at ¶ 5. Plaintiff did not contact EAP until July 20, 2015.

On May 14, 2015, plaintiff was found sleeping at her desk while at work. Id. at 95-96, 146, & 164. Plaintiff explained to her supervisor that she was exhausted due to working a number of days without a day off. Id. at 96 & 164. She was shown leniency for that terminable offense due to her demanding work schedule.

Id. at 96, 105, 158, & 164. She had fallen asleep at her desk on other occasions. Id. at 70.[2]

In June 2015, plaintiff notified defendant that she was unable to be on-call during certain times, despite the mandatory nature of some on-call requests. Id. at 57-59 & 136. Grubbs reminded plaintiff by letter that plaintiff was not permitted to unilaterally decide to be unavailable. Id. at 136 & 152, ¶ 5. The letter further explained to plaintiff that "[a]ny medical condition that impacts [plaintiff's] ability to meet [her] employment obligations must be reviewed and approved with the BNSF Medical Department." Id. at 136. Plaintiff did not seek assistance from the medical department. Id.; Doc. 51 at 3.

On June 6, 2015, plaintiff was found huddled over a trash can. Doc. 23 at 60-65 & 152; Doc. 51 at 3. Paramedics were called and plaintiff was transferred by ambulance to a local hospital. Doc. 23 at 60-65 & 152; Doc. 51 at 4. Plaintiff returned to work several days later with a medical release from her doctor that stated that plaintiff could perform her job without any medical restrictions. Doc. 23 at 66-68, 137-42, &

---

[2] When complaining to her physician of insomnia on June 10, 2014, she told her physician that "she was having problems with falling asleep at work." Id. at 144.

152. She also signed a form representing that she could return to work free of restrictions:

> I, Amber M. Kaye, BNSF Employee number B0144766 acknowledge that I can safely return to my regular duties following an absence from work since 6/6/15 (date last worked). I do not have work place restrictions that prevent me from performing all of my work tasks safely.

Id. at 143

On July 19, 2015, after noticing that plaintiff was not at her desk, Grubbs began searching for plaintiff. Id. at 153, ¶¶ 9-11. Eventually, Grubbs looked under plaintiff's desk to see if plaintiff's purse was there, based on the belief that if plaintiff's purse was under her desk it would mean that plaintiff was at least on site. Id. at 153, ¶ 10; Doc. 51 at 47-48. When she did, she found plaintiff sleeping on her side, "wrapped in . . . a coworker's parka." Doc. 23 at 153, ¶ 11. When Grubbs awakened plaintiff, she reminded plaintiff that if she was experiencing a medical issue, she needed to go to defendant's medical department, "otherwise she needed to sit down and do her job." Id. at 154, ¶ 13; Doc. 51 at 47-48. Her supervisors further offered to let her leave early and to arrange for a ride home. Doc. 23 at 154, ¶ 14; Doc. 51 at 47-48. Plaintiff refused these offers, insisted she was fine, and finished her shift without further incident. Doc. 23 at 154-55, ¶¶ 14-15; Doc. 51 at 47-48.

The following day, July 20, 2015, plaintiff contacted EAP for the first time. Doc. 23 at 17-21, 55, 98-100, 120-22, & 147-49. EAP advised plaintiff that she needed to receive an assessment at Texas Health Alliance Behavioral Health to develop a plan. Id. at 148. Plaintiff was given further instructions to follow-up with EAP after her evaluation if additional assistance was needed, but plaintiff never followed up. Id.

On August 3, 2018, plaintiff's coworker Tony Bagzis ("Bagzis") sent a letter to Carl Ice, defendant's President and CEO, on plaintiff's behalf, representing that he believed that plaintiff was being subject to discrimination and retaliation. Doc. 51 at 59-60.[3]

On August 11, 2015, defendant conducted a hearing as part of its formal investigation into the July 19, 2015 incident where

---

[3]This was Bagzis's second letter to Carl Ice. The first, sent on July 2, 2015, said:

Dear Mr. Ice,

    I would like to have a chance to meet with you on this matter of importance. I spoke with your secretary, Beverly, who stated you would be in your office on Monday, July 6, 2015.

    I feel that you will get this letter sooner by email than you would if I waited to bring it to you in person. I feel as though this is urgent for you to be informed.

    If you have any questions at all, please feel free to call me at any time. I want to Thank You in advance for your valuable time and attention.

Doc. 51 at 38. Both parties have submitted evidence to show that such letter was intended to bring to Mr. Ice's attention Bagzis's perception that plaintiff was being mistreated by defendant. Doc. 23 at 183-85; Doc. 51 at 36-40.

7

plaintiff was found asleep under her desk. Doc. 23 at 180-82, ¶ 5-7. Plaintiff was represented at the hearing by her union representative. Doc. 51 at 41. Plaintiff, Bagzis, and Grubbs testified at the hearing. Doc. 23 at 174-78; Doc. 51 at 41-46.

Based on an evaluation of the evidence presented at the hearing, the officer in charge concluded that plaintiff had not suffered a panic attack but was instead sleeping when she was found under her desk. Doc. 23 at 180, ¶ 5. The officer recommended that plaintiff's employment be terminated. Id. A second representative of defendant concurred. Id. After reviewing the recommendation and the transcript of the hearing, Bonnie Van Sickle, the supervisor who made the decision to terminate plaintiff, accepted the recommendation to terminate plaintiff for violating a company policy that prohibited employees from sleeping while on duty. Id.

IV.

Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure states that the court shall grant summary judgment on a claim or defense if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. The summary judgment movant bears the initial burden of showing that there is no genuine dispute of material fact. Celotex Corp. v. Catrett, 477

U.S. 317, 323, 325 (1986). The movant can carry this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmovant's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmovant must identify specific evidence in the record and articulate the precise manner that creates a genuine dispute of material fact. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). A fact is material if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a rational fact finder could resolve the dispute in favor of either party. Id.

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the

nonmovant, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597 (1986); see also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

V.

Analysis

A. The ADA Claims[4]

1. Disability Discrimination

Plaintiff's first asserted claim against defendant is that defendant impermissibly terminated her because of a disability. The ADA prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability . . . ." 42 U.S.C. § 12112(a). Absent direct evidence of discrimination, a plaintiff must show that: "(1) [s]he has a disability; (2) [s]he was qualified for the job; and (3) [s]he

---

[4]In addition to the ADA, plaintiff brings each of her ADA-related claims pursuant to Chapter 21 of the Texas Labor Code. "An express purpose of Chapter 21 is to provide for the execution of the policies embodied in Title I of the [ADA]." Jurach v. Safety Vision, LLC, 642 F. App'x 313, 318 (5th Cir. 2016) (citing Tex. Lab. Code. § 21.001(3) and Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 n. 4 (5th Cir. 1999). Thus, it is appropriate for the court to apply federal law when interpreting claims brought pursuant to Chapter 21. See Talk, 165 F.3d at 1021; Hoffmann–La Roche Inc. v. Zeltwanger, 144 S.W.3d 438, 445-46 (Tex. 2004).

was subject to an adverse employment decision on account of [her] disability." Delaval v. Ptech Drilling Tubulars, L.L.C., 824 F.3d 476, 479 (5th Cir. 2016) (internal quotation marks and citations omitted). After establishing a prima facie case, "the burden shifts to the employer to 'articulate a legitimate, nondiscriminatory reason for' the adverse employment action." Id. Then, the employee must present evidence that the articulated reason is pretextual. Id. "[D]iscrimination need not be the sole reason for the adverse employment decision . . . so long as it actually plays a role in the employer's decision making process and has a determinative influence on the outcome." Id. at 479-80 (alterations omitted).

    a.    No Evidence to Support Finding of Prima Facie Case

Plaintiff's claim of disability discrimination fails because plaintiff has not adduced evidence to satisfy her prima facie case burden. Under the ADA, a "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8).

"To avoid summary judgment on whether [an employee] is a qualified individual, [the employee] needs to show (1) that [s]he could perform the essential functions of the job in spite of [her] disability or (2) that a reasonable accommodation of [her]

11

disability would have enabled [her] to perform the essential functions of the job." Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996). "Providing a 'reasonable accommodation' under the ADA does not require the employer to 'relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties.'" Claiborne v. Recovery Sch. Dist., 690 F. App'x 249, 254 (5th Cir. 2017) (quoting Robertson v. Neuromedical Ctr., 161 F.3d 292, 295 (5th Cir. 1998)). "If [the employee] can't perform the essential functions of [her] job absent assigning those duties to someone else, (e.g., having someone else perform [her] job) then [the employee] can not be reasonably accommodated as a matter of law." Robertson, 161 F.3d at 295.

Plaintiff has adduced no summary judgment evidence that she could perform the essential functions of her job as a customs clerk. She claimed that "the only physical requirements [of her job] are lifting and sitting, and that plaintiff "was able to perform those functions," doc. 50 at 15, but, sitting and lifting are not the only job requirements that a customs clerk must be able to perform. Plaintiff admitted that it was critical in her role as a customs clerk to maintain complete attentiveness at all times. Doc. 23 at 40 & 53. Moreover, plaintiff has failed to

point to any summary judgment evidence that a reasonable accommodation would have allowed her to perform her job.

Plaintiff has also failed to establish that she was subject to an adverse employment decision <u>because of her disability</u>. An employee must show that discrimination was at least a motivating factor contributing to the adverse employment decision. <u>Pinkerton v. Spellings</u>, 529 F.3d 513, 519 (5th Cir. 2008); <u>Soledad v. U.S. Dep't of Treasury</u>, 304 F.3d 505, 503 (5th Cir. 2002) ("Under the ADA, discrimination need not be the sole reason for the adverse employment decision, but must actually play a role in the employer's decision making process and have a determinative influence on the outcome." (internal quotation marks and brackets removed)). Plaintiff provided no such evidence to support her contention that she was terminated because of any disability.

Plaintiff does not challenge that defendant sincerely believed she was sleeping. In any event, whether plaintiff was under her desk because she suffered an anxiety attack or because she was sleeping is not dispositive. The essential question in evaluating whether an employment decision was wrongful is whether the employer reasonably believed an employee was engaged in wrongdoing. <u>See</u> <u>Sanstad v. BC Richard Ellis, Inc.</u>, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue is . . . whether [defendant's]

13

reason, even if incorrect, was the real reason for plaintiff's termination."); Deines v. Tex. Dep't of Prot. & Reg. Servs., 164 F.3d 277, 281 (5th Cir. 1999). There is no summary judgment evidence that defendant did not honestly and reasonably believe that plaintiff was sleeping under her desk and that whatever caused that to happen prevented plaintiff from being qualified to perform the duties of her job with defendant.

        b.    Legitimate Reason for Termination and No Evidence of Pretext

Even if plaintiff had established a prima facie case of discrimination, which the court finds she has not done, defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff, and plaintiff has not offered substantial evidence that defendant's legitimate, nondiscriminatory reason is pretext for discrimination.

As explained above, plaintiff acknowledges that she was terminated because her supervisor believed plaintiff was sleeping when plaintiff was found asleep under her desk, wrapped in her coworker's parka. Doc. 23 at 96.

Plaintiff does not point to any evidence tending to show that Grubbs was hostile to whatever medical condition plaintiff might have had. While it is true that Grubbs stated plaintiff could not unilaterally decide to be unavailable for her on-call shifts, the letter conveying such information also informed

14

plaintiff that "[a]ny medical condition impact[ing] [plaintiff's] ability to meet [her] employment obligations must be reviewed with the BNSF Medical Department." Doc. 51 at 16. If anything, this statement should be viewed as encouraging plaintiff to seek assistance if she had a medical condition affecting her ability to work.

Thus, summary judgment on plaintiff's disability discrimination claim is proper on the additional ground that defendant had a legitimate non-discriminatory reason to terminate plaintiff's employment and plaintiff has not adduced evidence that such reason was a pretext for discrimination.

2. Failure-to-Accommodate

Plaintiff's second asserted claim against defendant is that defendant failed to reasonably accommodate plaintiff's disability in violation of the ADA. The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless . . . the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A); Griffin v. United Parcel Serv., Inc., 661 F.3d 216, 224 (5th Cir. 2011). To prevail on a failure-to-accommodate claim under the ADA, plaintiff must prove that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the

disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." Feist v. La., Dep't of Justice, Office of the Att'y Gen., 730 F.3d 450, 452 (5th Cir. 2013).

Plaintiff's failure-to-accommodate claim fails because plaintiff has adduced no evidence that she requested an accommodation for her asserted disability. Generally, it is incumbent on the disabled individual to inform the employer that an accommodation is needed. E.E.O.C. v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 621 (5th Cir. 2009) ("An employee who needs an accommodation . . . has the responsibility of informing her employer."). "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." Taylor v. Principal Fin. Grp., 93 F.3d 155, 165 (5th Cir. 1996). Once an accommodation for a limitation is requested, the employer must engage in the "interactive process" with the employee with the aim of finding an appropriate accommodation. Chevron Phillips Chem. Co., LP, 570 F.3d at 621. The employer violates the ADA by failing to engage in good faith in the interactive process. Griffin, 661 F.3d at 224. On the other hand, if the employee is responsible for a breakdown in the

interactive process, there is no violation. Id.; Taylor, 93 F.3d at 165.

Plaintiff testified that despite her knowledge of the procedure for requesting an accommodation, she never requested one. Doc. 23 at 26-27, 32-34, 37-38, 47-48, 55, 58-60, 75, 89, 98, 103, 135-136, & 148-49. Plaintiff called EAP on July 20, 2015, after the incident where she was found asleep under her desk, id. at 147-49, but nothing in the record suggests that plaintiff contacted EAP in an effort to obtain an accommodation for her alleged disability. Instead, the record shows that plaintiff cited "mandatory supervisor referral for poor work behavior/problems" as the reason she contacted EAP. Id. at 147.

To the extent that plaintiff claimed during her deposition that she was in fact attempting to request an accommodation when she contacted EAP, such claim suffers a fatal flaw: plaintiff failed to follow up with EAP after her initial meeting. See Delval, 824 F.3d at 482 (finding that employee who failed to follow up with medical documentation fatally hindered the interactive process). After discussing the issues plaintiff was facing at work and at home, a representative of EAP recommended that plaintiff be medically evaluated. Doc. 23 at 100 & 148. EAP instructed plaintiff to follow up after her assessment if additional assistance beyond the medical evaluation was

necessary. Id. Plaintiff went for an evaluation but never contacted EAP again. Id. at 121-22.

3. Retaliation

Plaintiff's final claim against defendant is that defendant retaliated against plaintiff by terminating her in response to Bagzis's letters to Carl Ice. The ADA prohibits employers from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203. To prevail on a retaliation claim, plaintiff is required to prove: "(1) she engaged in activity protected by the ADA; (2) an adverse employment action occurred; and (3) causal connection exists between the protected act and the adverse action." Credeur v. La. Through Office of Att'y Gen., 860 F.3d 785, 797 (5th Cir. 2017) (citing Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999)). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for

retaliation." LeMaire v. Louisiana, 480 F.3d 383, 388-89 (5th Cir. 2007) (internal citation omitted).

To overcome defendant's articulated legitimate non-retaliatory reason for terminating plaintiff, plaintiff must adduce evidence raising a genuine issue of material fact as to whether that reason is actually pretext for retaliation. Feist, 730 F.3d at 454; LeMaire, 480 F.3d at 388-89. "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." Seaman, 179 F.3d 297, 301 (5th Cir. 1999). Plaintiff has failed to adduce any summary judgment evidence that protected activity was a factor in her discharge.

B. FMLA and Title VII Claims

Plaintiff asserted in her original complaint claims arising under the FMLA and Title VII. In her motion for leave to amend her pleadings, plaintiff expressly stated that one of the reasons she sought to amend her complaint was to remove such claims. Doc. 18 at 1, ¶ 1.01 ("The new complaint removes her claims related to FLMA and Title VII."). Indeed, the claims do not appear in plaintiff's live complaint. To the extent that plaintiff has attempted to revive her FMLA claim through her response to the motion for summary judgment, she is not entitled to do so.

VI.

Order

Consistent with the foregoing,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff against defendant in the above-captioned action be, and are hereby, dismissed.

SIGNED May 31, 2018.

JOHN McBRYDE
United States District Judge